**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

      *Plaintiffs*,

  v.

U.S. ARMY CORPS OF ENGINEERS, *et al.*

      *Federal Defendants*,

  and

FG LA LLC,

      *Defendant-Intervenor*.

Civil Case No. 1:20-cv-103-RDM

**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION TO ADMIT EXTRA-RECORD EVIDENCE</u>**

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ............................................................................................ 1

II.   LEGAL BACKGROUND ............................................................................................. 3

III.  ARGUMENT ................................................................................................................. 6

      A.    The February 2020 CEI report does not satisfy any of the unusual
            circumstances warranting this Court's consideration of extra-record
            evidence. ................................................................................................................ 6

            1.    The Corps did not, and could not have, "deliberately or negligently
                  excluded" a document that did not exist when it issued the permit............ 7

            2.    The CEI Report does not show that the Corps failed to consider any
                  "relevant factors." ..................................................................................... 8

            3.    The administrative record lodged by the Corps equips this Court
                  with the background information and explanations it needs to review
                  the Corps' action. ..................................................................................... 12

      B.    Plaintiffs' Exhibits A-D do not meet any of the unusual circumstances
            justifying their consideration as extra-record evidence. ...................................... 15

      C.    Plaintiffs' Exhibits F-H do not meet any of the unusual circumstances
            justifying their consideration as extra-record evidence ...................................... 18

IV.   CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Am. Wildlands v. Kempthorne*,
    530 F.3d 991 (D.C. Cir. 2008) ........................................................................... 4, 5, 6

*Am. Wildlands v. Norton*,
    No. CIVA 05-1043, 2006 WL 2780702 (D.D.C. Sept. 21, 2006) ............................................ 8

*Animal Legal Def. Fund, Inc. v. Perdue*,
    872 F.3d 602 (D.C. Cir. 2017) ............................................................................ 5, 7

*City of Dania Beach v. FAA*,
    628 F. 3d 581 (D.C. Cir. 2010) ........................................................................ 5, 8, 16

*Crutchfield v. County of Hanover, Virginia*,
    325 F.3d 211 (4th Cir. 2003) ............................................................................... 17

*CTS Corp. v. EPA*,
    759 F.3d 52 (D.C. Cir. 2014) .................................................................................. 4

*Cty. of San Miguel v. Kempthorne*,
    587 F. Supp. 2d 64 (D.D.C. 2008) ........................................................................... 5

*Dept. of Comm. v. N.Y.*,
    139 S. Ct. 2551 (2019) ...................................................................................... 3, 4

*Esch v. Yuetter*,
    876 F.2d 976 (D.C. Cir. 1989) ................................................................................ 5

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) .......................................................................................... 3

*Food & Water Watch v. U.S. Dep't of Agric.*,
    325 F. Supp. 3d 39 (D.D.C. 2018) ........................................................................... 4

*Friends of the Earth v. Hintz*,
    800 F.2d 822 (9th Cir. 1986) ............................................................................... 17

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ......................................................................................... 19

*Hill Dermaceuticals, Inc. v. FDA*,
    709 F.3d 44 (D.C. Cir. 2013) ............................................................................... 12

*IMS, P.C. v. Alvarez*,
    129 F.3d 618 (D.C. Cir. 1997) .......................................................................... 16, 19

*James Madison Ltd. By Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) .......................................................................... 12, 13

*Kent Cty., Del. Levy Court v. U.S. EPA*,
    963 F. 2d 391 (D.C. Cir. 1992) ........................................................................ 7, 8

*Marcum v. Salazar*,
    751 F. Supp. 2d 74 (D.D.C. 2010) ................................................................. 4, 19

*Marsh v. Or. Natural Res. Council*,
    490 U.S. 360 (1989) ............................................................................................ 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................................................... 3

*Oceana, Inc. v. Pritzker*,
    126 F. Supp. 3d 110 (D.D.C. 2015) ..................................................... 4, 17, 18

*Oceana, Inc. v. Ross*,
    No. 17-cv-289-CRC, 2020 WL 1905148 (D.D.C. Apr. 17, 2020) ............ 5, 8, 9, 10, 11, 12, 15

*Saratoga Dev. Corp. v. United States*,
    21 F.3d 445 (D.C. Cir. 1994) ................................................................................ 4

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    990 F. Supp. 2d 9 (D.D.C. 2013) .......................................................................... 3

*Summit Lake Paiute Tribe of Nev. v. U.S. Bureau of Land Mgmt.*,
    496 Fed. App'x. 712 (9th Cir. 2012) ................................................................... 13

*United Student Aid Funds, Inc. v. Devos*,
    237 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................... 5

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*,
    435 U.S. 519 (1978) ............................................................................................. 3

**Statutes**

5 U.S.C. § 706(2) .......................................................................................................... 4

5 U.S.C. §§ 701-706 ..................................................................................................... 3

33 U.S.C. §§ 1251-1388 ............................................................................................... 3

33 U.S.C. §§ 400-426p ................................................................................................. 3

42 U.S.C. §§ 4321-4370h ............................................................................................. 3

54 U.S.C. § 300101 ...................................................................................................... 3

**Regulations**

33 C.F.R. § 320.4(a)(1) ................................................................................................. 3

33 C.F.R. § 325 ........................................................................................................... 13

36 C.F.R. § 800.4 ....................................................................................................... 13

36 C.F.R. § 800.4(b)(1) .............................................................................................. 13

Plaintiffs request this Court's consideration of eight extra-record documents that they claim demonstrate that the Corps did not comply with the National Environmental Policy Act ("NEPA") or the National Historic Preservation Act ("NHPA") in issuing a permit to FG LA, LLC ("FG LA") under section 404 of the Clean Water Act and section 10 of the Rivers and Harbors Act. The D.C. Circuit has long been clear in holding that extra-record evidence is admitted in only rare circumstances, none of which are present here. Of the eight documents proposed by Plaintiffs, half post-date the Corps' decision, and the other half were not presented to the Corps. The Corps cannot "overlook or brush aside," Pls. Mot. at 2, ECF No. 27, a report and correspondence that did not exist at the time the Corps made its decision, or was allegedly shared among third parties and never provided to the Corps. While the Plaintiffs disagree with the Corps' decision to issue a permit to FG LA, this is not a case where the Corps failed to explain its administrative action. There are multiple contemporaneous explanations of the process and factors the Corps considered in its NEPA and NHPA compliance. Plaintiffs fail to show that any of the eight documents they move to admit as extra-record evidence satisfy any of the three unusual circumstances warranting such an action. Their Motion should therefore be denied.

## I.     FACTUAL BACKGROUND

The project at issue involves the construction of a petrochemical complex and marine facility ("the Project") near Welcome, Louisiana in St. James Parish by Defendant-Intervenor FG LA. Because the Project involves excavation and fill activities in jurisdictional wetlands and other waters of the United States, as well as work along the Mississippi River, FG LA applied for a permit under section 404 of the Clean Water Act and section 10 of the Rivers and Harbors Act from the United States Army Corps of Engineers.

In evaluating FG LA's application for a permit, the Corps assessed the Project under both NHPA and NEPA. After reviewing the Project's possible effects on historic resources, the Corps made a finding that the undertaking would not affect any historic properties. AR000165. The Corps based this finding in part on FG LA's agreement to erect a fence around the Buena Vista cemetery, a site where an archaeological survey revealed human remains, in order to avoid impacts to historic resources. *Id.* The Corps also determined, after a thorough assessment of the environmental impacts, that the permit action would not have a significant impact on the quality of the human environment. AR000184. Having made these and other findings, the Corps issued the permit to FG LA on September 5, 2019. AR00001.

Plaintiffs' proposed documents consist of eight documents that are not part of the administrative record, but which Plaintiffs argue meet one of the recognized exceptions for consideration of extra-record evidence. Exhibits B-D are email correspondence dating from August 2018 – February 2019 between third parties discussing the archaeological surveys conducted in the Project area and efforts to avoid effects to historic resources.[1] Exhibit E is a February 2020 archaeological report from a private company evaluating the prior archaeological surveys conducted in the Project area. Exhibits F-H are correspondence dating from May – June 2020 between counsel at the Center for Constitutional Rights and counsel for Defendant-Intervenor about obtaining access to the property. The Corps was carbon copied on Exhibit F. Plaintiffs have not demonstrated that any of the narrow exceptions justifying admission of extra-record evidence apply.

---

[1] Exhibit A is a Public Records Act request. Its sole purpose is to authenticate Exhibits B-D. Pls. Mot. at 10.

II.     **LEGAL BACKGROUND**

Plaintiffs bring their claims under the National Environmental Policy Act, 42 U.S.C. §§

4321-4370h, the National Historic Preservation Act, 54 U.S.C. §§ 300101 *et seq.*, the Rivers and

Harbors Act, 33 U.S.C. §§ 400-426p, and the Clean Water Act, 33 U.S.C. §§ 1251-1388. NEPA

is a procedural statute that requires federal agencies to inform themselves of the environmental

effects of proposed federal actions and consider reasonable alternatives before taking action.

*Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, *18 (D.D.C. 2013); *Vt. Yankee

Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519 (1978) (NEPA's "mandate" to

the agencies is essentially procedural.). Under the NHPA, prior to issuing a permit, the Corps

must take into account the effect of the undertaking on any historic property. 54 U.S.C.

§ 306108. Prior to issuing a permit under section 404 of the Clean Water Act or section 10 of the

Rivers and Harbors Act, the Corps must (among other requirements) evaluate the probable

impacts, including cumulative impacts, of the proposed activity and its intended use on the

public interest. 33 C.F.R. § 320.4(a)(1).

Claims asserting violations of these statutes are reviewed under the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Under the APA, agency action is arbitrary and

capricious "if the agency has relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem, [or] offered an explanation for its

decision that runs counter to the evidence before the agency[.]" *Motor Vehicle Mfrs. Ass'n of

U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The APA permits review of "final agency action" based on the administrative record the

agency presents to the reviewing court. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44

(1985); *Dept. of Comm. v. N.Y.*, 139 S. Ct. 2551, 2573 (2019) ("[I]n reviewing agency action, a

3

court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); 5 U.S.C. § 706(2) ("the court shall review the whole record or those parts of it cited by a party"). The record must include all of the information that the agency considered "either directly or indirectly." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). An administrative record will generally be considered adequate for judicial review where, as here, the agency has provided a contemporaneous explanation for its decision. *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994); *see also Dep't of Commerce*, 139 S. Ct. at 2753 (2019) ("[I]n order to permit meaningful judicial review, an agency must 'disclose the basis' of its action." (citation omitted)).

With their Motion, Plaintiffs seek to include extra-record evidence that was not before the Corps when it issued the permit to FG LA. Plaintiffs do not argue that the Corps directly or indirectly considered these documents and improperly excluded them from the record, but rather, that even though the Corps did not possess the proposed documents at the time of its decision, this Court should nonetheless consider them as extra-record evidence beyond the actual administrative record the Corps considered.

In reviewing agency action under the APA, courts review the administrative record that was before the agency at the time it made its decision. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008). This general rule is difficult to overcome. Consideration of extra-record evidence on the merits is rare, and is "primarily limited to cases where the procedural validity of the agency's action remains in serious question … or the agency affirmatively excluded relevant evidence." *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014); *see also Oceana, Inc. v. Pritzker*, 126 F. Supp. 3d 110, 112-13 (D.D.C. 2015) ("Resort to extra-record evidence is 'the exception, not the rule.'") (citation omitted); *see also Food & Water*

*Watch v. U.S. Dep't of Agric.*, 325 F. Supp. 3d 39, 48 (D.D.C. 2018) ("Underlying these exceptions, however, is the strong presumption that an agency has properly compiled the entire record of materials that it considered, either directly or indirectly, in making its decision."); *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 79 (D.D.C. 2008) (the party seeking admission of extra-record evidence must show that "'the record is so bare that it prevents effective judicial review'") (citation omitted).

More specifically, courts in this circuit have identified three "unusual circumstances" sufficient to justify a departure from the general rule that an agency's decision can only be judicially reviewed on the administrative record that was before the agency. *See Oceana, Inc. v. Ross*, No. 17-cv-289-CRC, 2020 WL 1905148 at *3 (D.D.C. Apr. 17, 2020) (quoting *City of Dania Beach v. FAA*, 628 F. 3d 581, 590 (D.C. Cir. 2010) (internal quotations omitted)). The three such circumstances identified by the D.C. Circuit are: (1) when "'the agency deliberately or negligently excluded documents that may have been adverse to its decision'"; (2) when "background information [is] needed 'to determine whether the agency considered all the relevant factors'"; or (3) when "the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach*, 628 F.3d at 590 (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).[2] Simple disagreement with an agency's conclusions is not a sufficient reason to admit extra-record evidence. *See Am. Wildlands*, 530 F.3d at 1002.

---

[2] While the D.C. Circuit has, over the years, articulated in various ways the narrow exceptions to the rule that a reviewing court should have before it only that information which the agency had when it made its decision, the number of recognized exceptions has decreased since the D.C. Circuit's ruling in *Esch v. Yuetter*, 876 F.2d 976 (D.C. Cir. 1989). *See United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, *4 (D.D.C. 2017) (describing "the D.C. Circuit's trend towards limiting the circumstances in which district courts may consider evidence outside the administrative record . . . [.]"); *see also Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017).

### III.     ARGUMENT

Here, Plaintiffs have not demonstrated that any of the narrow exceptions justifying admission of extra-record evidence apply. Plaintiffs do not assert that the Corps acted in bad faith or otherwise acted improperly by not including the proposed documents in the administrative record. They fail to identify any relevant factor reflected in the documents they seek to admit that was not already considered by the Corps. And while they make a conclusory assertion that the record is so bare as to frustrate judicial review, Pls. Mot. at 5, they have not pointed to any aspect of the Corps' decisionmaking process that is not reflected in the record or explained how the proffered extra-record materials would fill any such gaps. At bottom, Plaintiffs are asking the Court to consider the merits. They simply disagree with the Corps' conclusions, and are seeking to support their contrary position with evidence that was not presented to the Corps during the administrative process. This is not a sufficient basis to admit extra-record evidence for purposes of reviewing agency action.

> **A.     The February 2020 CEI report does not satisfy any of the unusual circumstances warranting this Court's consideration of extra-record evidence**.

The first document Plaintiffs seek to admit is an archaeological report (the "CEI Report") prepared five months after the Corps issued the permit. Plaintiffs argue that, absent admission of the CEI Report, this Court will lack the materials necessary to enable judicial review of the Corps' actions. Pls. Mot. at 5. But this argument is disproved by the record itself, which documents the Corps' extensive investigation and analysis of the Project's impacts to historic resources. The CEI Report cannot have been "excluded" from the record given that it significantly post-dates the permit. And it does not show that the Corps failed to consider any relevant factors. Plaintiffs have not met their burden to show that the CEI Report meets any of the unusual circumstances warranting a departure from the general rule that extra-record

evidence is not proper evidence for consideration in review of agency action, and their Motion
should therefore be denied.

> ### 1. The Corps did not, and could not have, "deliberately or negligently excluded" a document that did not exist when it issued the permit.

The CEI Report does not meet the first unusual circumstance exception because it post-
dates the Corps' final action—issuance of the permit—by five months. Plaintiffs seek to expand
this exception to apply to documents that were not in existence or in the agency's possession at
the time of its decision. There is no legal basis to re-write D.C. Circuit precedent in this manner.
The exception Plaintiffs attempt to invoke presumes that the "deliberately or negligently
excluded" documents were in existence at the time the agency rendered its decision. *See Animal
Legal Def. Fund, Inc.*, 872 F.3d at 620 ("As part of this inquiry, the District Court should
reconsider its decision denying Appellants' motion to supplement the administrative record. In
order to analyze the agency's rationale for relying on the self-certification scheme in an allegedly
'smoking gun' case such as this, the court must have access to other records *the agency had in its
possession* at the time of its decision.") (emphasis added). Where, as here, the document in
question did not exist and was not presented to the Corps before its permit decision, this
exception is inapplicable on its face. Plaintiffs have failed to present any legal authority for
expanding the scope of the first exception and for that reason alone, their motion must be denied.

Indeed, in the case Plaintiffs cite to support their argument that this exception applies to
the CEI Report, the D.C. Circuit made precisely this distinction between pre- and post-decision
documents. *Kent Cty., Del. Levy Court v. U.S. EPA*, 963 F. 2d 391, 396 (D.C. Cir. 1992). In *Kent
County*, the court admitted extra-record documents that EPA had in its possession prior to its
decision but had nonetheless "negligent[ly]" failed to consider. *Id.* However, in the same
discussion, the D.C. Circuit *rejected* the plaintiffs' request to consider a document containing

similar subject matter that "was not issued until … after the EPA issued its decision." *Id.* The

same rationale applied in *Kent County* applies to the CEI Report—it is not proper extra-record

evidence because it post-dates the Corps' decision.

Plaintiffs attempt to circumvent this limitation by arguing that the CEI Report should be

admitted because the Corps allegedly excluded "relevant *information*" reflected in the CEI

Report that the Corps purportedly could or should have uncovered by undertaking its own

investigation *sua sponte*. Pls. Mot. at 8 (emphasis added); *see id.* (arguing Corps "neglected to

*investigate* potential impacts to historical resources") (emphasis added). But this

mischaracterizes the exception, which is limited to *documents* that have been deliberately or

negligently excluded from the record. *See City of Dania Beach*, 628 F.3d at 590; *Am. Wildlands

v. Norton*, No. CIVA 05-1043, 2006 WL 2780702, at *2 (D.D.C. Sept. 21, 2006) (declining to

admit post-decision document even though underlying data were collected pre-decision).

Plaintiffs offer no justification for expanding the scope of the first exception in this manner, and

there is none.

### 2.   The CEI Report does not show that the Corps failed to consider any "relevant factors."

The CEI report also fails to satisfy the "relevant factors" exception. To qualify for this

exception, "the document in question must do more than raise 'nuanced points' about a particular

issue; it must point out an '*entirely new*' general subject matter that the defendant agency failed

to consider." *Oceana, Inc.*, 2020 WL 1905148, at *4 (D.D.C. April 17, 2020) (citation omitted)

(emphasis in original). Plaintiffs have not shown that the CEI Report identifies or elucidates any

"relevant factors" overlooked by the Corps.

Plaintiffs claim the CEI Report shows the Corps failed to "adequately research,

investigate, or identify cemeteries at the site." Pls. Mot. at 9. As an initial matter, this is not an

argument that the Corps failed to consider a relevant factor, but rather that the Corps did not consider it in the manner Plaintiffs would prefer. As the court explained in *Oceana, Inc.*, this argument "confuses the summary judgment question"—whether the Corps adequately considered a relevant factor—"with the admissibility question—whether extra-record evidence is needed to discern *whether* the agency considered [that factor] at all." *Id.* at *6. Extra-record evidence cannot be admitted for purposes of answering the former.

Here, the record leaves no question that the Corps did consider the presence of and effect on potential burial sites in depth and accounted for this factor in its permit decision. In its investigation of effects on historic resources, the Corps looked extensively at the only two burial sites recognized by the State Historic Preservation Office ("SHPO"): Buena Vista cemetery and Acadia, an area of the property thought to have at one time served as a cemetery. An archaeological survey of Buena Vista uncovered human remains, and the SHPO and Corps accepted a fencing plan proposed by FG LA to protect the resources. AR000109-110. When a subsequent investigation revealed that the boundaries of the Buena Vista cemetery were different than originally thought, the fencing plan was altered to reflect the new boundaries. The Corps determined that, with these measures, there would be no effect on cultural resources and that the public would have access to Buena Vista. *Id.* As for the Acadia site, the Corps determined that the Project would have no significant effects because the site did not contain any historic resources. *See* AR000164-65 ("Based on archival information, the cemetery was located where the previous landowner dug the borrow pits."). When subsequent information led to concerns that the wrong location had been investigated for Acadia, FG LA's contractor performed additional surveys, which still did not identify any remains. *See* AR000165 ("Archaeologist [sic] have gone to the area and looked for this cemetery on two separate digs and did not find any

remains."). The Corps consulted with the SHPO at multiple steps in this process, and the SHPO concurred in the Corps' finding of no effect.

The CEI Report merely presents the authors' disagreements as to "nuanced points" involving the Project's impact on potential burial sites, without identifying any broader subject matter that the Corps failed to consider. *See Oceana, Inc.*, 2020 WL 1905148 at *4. While the CEI Report's authors offer their own opinions on how to identify the locations of Buena Vista, Acadia, and other historical features that may have appeared on the property at one time, they do not provide any information to suggest that the Corps entirely overlooked the Project's potential impacts on burial sites. Indeed, the CEI Report actually bolsters the Corps' conclusions in some respects, confirming that the Corps did consider this relevant factor. Regarding the Buena Vista cemetery, the CEI Report found that FG LA's archaeologists dug their trenches in the correct location and that the fence planned as part of the Project was placed in the proper location. Ex. E at 87. With regard to Acadia, the CEI Report echoes the Corps' analysis that past agricultural work on the property impacted Acadia, concluding that excavation of several large borrow pits around the site potentially destroyed two thirds of it. Ex. E at 20. Although the CEI Report disagrees with the trench locations FG LA's archaeologists used to investigate the Acadia site, it does not suggest the Corps failed to consider the potential presence of and effects on historic resources there.

And while the CEI Report also identifies for the first time four "anomalies" among the area's topography the authors believe may represent additional unmarked burial sites, this kind of information, which was only developed after the permit decision and could not have been considered by the Corps, is not the kind of "relevant factor" that may be introduced via extra-record evidence. *See Oceana, Inc.*, 2020 WL 1905148 at *4 (purpose of "relevant factors"

exception is to aid in conducting narrow "arbitrary and capricious review," not to "determine the correctness or wisdom of the agency's decision" after the fact). Had CEI had more information to share, it should have done so during the review process. Plaintiffs cannot show that Congress intended NEPA to be a never-ending process, or for an agency's NEPA analysis to be a living document always subject to further analysis and fine-tuning. *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360 (1989) (upholding agency's finding that new data on fish survival rate did not warrant supplementation of environmental impact statement because agency had carefully scrutinized the proffered information). Granting Plaintiffs' requested relief would further incentivize plaintiffs to withhold information during the permit review process. This Court should not measure the Corps' permit decision against information that did not exist at the time of the agency action.

Plaintiffs also claim the CEI Report shows the Corps failed to "consider relevant factors by … entirely relying on [FG LA]'s faulty reports for its permitting decision." Pls. Mot. at 9. Again, Plaintiffs fail to identify what "relevant factor" the Corps purportedly overlooked by relying on reports submitted by FG LA as part of its permit application process. To the extent Plaintiffs argue that the Corps failed to consider concerns about the accuracy and reliability of FG LA's archaeological reports, their argument is unavailing. For one, nothing in the CEI Report is probative as to *whether* the Corps evaluated the reliability of FG LA's reports, since nothing in the CEI Report purports to characterize or critique the Corps' action. *See Oceana, Inc.*, 2020 WL1905148 at *6. Nor is the CEI Report necessary to answer that question: the record is clear that the Corps did not blindly accept FG LA's representations as to impacts on potential historic resources. Among other steps, the record shows that the Corps and SHPO were in communication regarding these potential impacts; that both agencies sought additional

11

investigative work from FG LA each time concerns were raised about its archaeological surveys; and that the Corps awaited the SHPO's concurrence with respect to the results of the final investigation. *See* AR004673 (discussing upcoming phone call from SHPO to Corps about Buena Vista cemetery), AR000297-302 (email from FG LA to the Corps transmitting supplemental information for a historic resources avoidance plan), AR000284 (fulfilling Corps' request that FG LA provide final SHPO concurrence prior to Corps' action). Thus, nothing in the CEI Report is needed to determine whether the Corps considered all the relevant factors.

### 3. The administrative record lodged by the Corps equips this Court with the background information and explanations it needs to review the Corps' action.

Finally, Plaintiffs have failed to show that the record is so bare that "[j]udicial review will be frustrated without consideration of the CEI Report." Pls. Mot. at 9. Application of this exception is limited to cases involving "gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review." *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013). Where there is "sufficient information in the record for the Court to determine what process the agency followed in reaching its conclusions," admission of extra-record evidence is not warranted. *Oceana, Inc.*, 2020 WL 1905148 at *7 (internal quotation marks, alteration, and citation omitted); *see also James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (unnecessary to include extra-record evidence with underlying source documents because record contained "detailed memoranda describing the [agency's] findings and recommendation.") Here, all Plaintiffs can muster is a threadbare assertion that the Corps "failed to explain its decision and failed to fulfill its duties to identify and evaluate the impacts of its action on historic resources." This conclusory statement, with no further explanation, is insufficient to show the kind of gross procedural deficiency warranting consideration of extra-record material. And contrary to Plaintiffs' argument,

consideration of the CEI Report is unnecessary because the Corps thoroughly explained its

determination that the Project would not impact historic resources.

Under the Corps' and Advisory Council's regulations, the Corps must "make reasonable

and good faith effort" to identify historic properties within the undertaking's area of potential

effects. *See* 36 C.F.R. § 800.4(b)(1); 33 C.F.R. § 325, App. C. The Advisory Council's

regulations identify several different methods an agency may use to satisfy this requirement,

"which may include background research, consultation, oral history interviews, sample field

investigation, and field survey," *Id.*, but the good faith standard does not require the agency to

use all of those techniques. *Summit Lake Paiute Tribe of Nev. v. U.S. Bureau of Land Mgmt.*, 496

Fed. App'x. 712 (9th Cir. 2012).

Here, the administrative record contains a voluminous record illustrating the Corps'

consideration of potential impacts to historic resources and its finding that the Project would not

have a significant impact on cultural or historic resources. The record includes an extremely

comprehensive historical survey beginning with the pre-history of the area, up to its relatively

more recent history, including its use for sugar cultivation from 1750-1950. AR001428

(discussing the Paleo-Indian history beginning earlier than 1,500 B.C.E.); AR001448-51 (sugar

cultivation). The Corps relied on "field investigations" and "field surveys" as well as the two

other specific items suggested by the regulation: "background research" and "consultation." 36

C.F.R. § 800.4.

First, the Corps considered extensive data and findings regarding potential historic

resources in the project area from field investigation and field surveys. *See* AR001409-1543

(Phase I archaeological survey); AR005915-6010 (Phase II archaeological survey); and

AR000324-407 (archaeological monitoring and stripping of Buena Vista and Acadia sites). The

Corps also considered opinions from the SHPO, public comments, and information the Corps gathered from its NHPA Section 106 consultation process. *See* AR000287 (letter from SHPO to contractor for the applicant concurring with the conclusion that additional survey of the former Acadia cemetery uncovered no evidence of human remains or cultural/historical resources and concurring with the conclusion that survey successfully located and defined the Buena Vista cemetery); AR001544-1678, AR001681-1983 (public comments to Corps); AR001987-2126 (transcript of public hearing held at Vacherie, LA); AR003015-52 (written comments from three of four Plaintiffs' groups); AR001011-1099 (applicant's responses to public comments); AR000621-946 (letters seeking tribal consultation on the Corps' finding of no effects to historic properties with supporting materials); AR000533-34 (Jena Band of Choctaw Indians' concurrence with Corps' finding of no effect to historic properties).

Plaintiffs attempt to portray FG LA's successive archaeological surveys in portions of the project area as somehow undermining the Corps' analysis or revealing fundamental flaws in the record. Pls. Mot. at 6-7. This effort is misplaced. To the contrary, these successive surveys are fully documented in the record, as are the shortcomings (such as the absence of any discussion of Buena Vista or Acadia in FG LA's initial survey reports) that necessitated them. And rather than show that the Corps acted arbitrarily, instead, the record shows that the Corps required FG LA to conduct additional surveys, thus illustrating the Corps' diligence in ensuring thorough evaluation of eligible historical resources in the project area. AR005353. Through the record, this Court can trace the Corps' decisionmaking process that led to its conclusions with respect to the Project's impacts on potential burial sites: from the initial surveys that excluded Buena Vista and Acadia, AR001409-1543 and AR005915-6010; to the SHPO's informing the Corps that these sites were overlooked, AR005353; to FG LA's investigation of these sites in 2018, AR001410-1543 and

AR005915-6010; to the SHPO's determination that a different location needed to be investigated

for Acadia; to FG LA's follow-up survey, AR000324-407; to the SHPO's final concurrence,

AR000287.

The administrative record thoroughly supports the Corps' determination that the Project

would have no adverse impact on any historic property (in the context of the NHPA), or

significant impact on any cultural or historic properties (in the context of NEPA). As in *Oceana,*

*Inc.*, the Corps' record "provides justifications and technical rationales for the [Corps']

determination[s]" and "explains the reasoning behind the [Corps'] conclusion." 2020 WL

1905148 at *7. This is enough to foreclose introduction of extra-record evidence.

**B.      Plaintiffs' Exhibits A-D do not meet any of the unusual circumstances**
**justifying their consideration as extra-record evidence**.

Plaintiffs move this Court to consider emails between employees of the Louisiana

Attorney General's Office and the SHPO (Exs. C and D), and an email from the author of the

CEI report to the SHPO (Ex. B). Plaintiffs do not argue the Corps acted in bad faith or

improperly by excluding these documents from the administrative record, but yet again argue

they provide background information necessary to determine whether the Corps considered all

relevant factors in its assessment of impacts to historic resources.[3] Pls. Mot. at 9-11. Plaintiffs'

arguments fail.

First, no Corps employee is listed as a recipient on any of the emails, and Plaintiffs fail to

show that any of the emails were provided to the Corps before its September 5, 2019 permit

decision. Because the emails were not before the Corps at the time it made its permitting

decision, the documents are not proper materials for inclusion in the administrative record. *IMS,*

---

[3] Plaintiffs' Exhibit A, included by Plaintiffs for the purpose of authenticating Exhibits B-D, also
falls into this category of documents.

*P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) (courts should "consider only what was before the agency at the time of the decision.").

Second, the information in Exhibits A-D is not "needed to determine whether the agency considered all the relevant factors." *See City of Dania Beach*, 628 F.3d at 590. Plaintiffs claim the emails are necessary to demonstrate that CEI alerted the Corps (through the SHPO) of errors in FG LA's archaeological surveys, that historic and cultural resources might still be located at the Acadia site, and that discovery of such resources at Acadia would be "problematic" for the applicant's construction plans. Pls. Mot. at 11. But admission of these emails is unnecessary because the record already shows the Corps was aware of and considered all these factors in its permit decision.

As discussed above, on each occasion when CEI approached the SHPO with concerns regarding FG LA's analysis of potential impacts to cultural resources, the SHPO shared those concerns with the Corps and both agencies required FG LA to undertake further analyses to address them. The record shows that the Corps and the SHPO were diligent in their review of effects on historic resources. When CEI in 2018 presented the SHPO with a historic map indicating two cemeteries were on the proposed project area, the SHPO passed that information on and notified the Corps that FG LA would be required to either set the Acadia area aside as green space, or conduct monitoring and stripping of the site to determine if any burials were present. *Compare* Pls. Mot. Ex. D, *with* AR005353. FG LA completed that testing in 2018. AR001410-1543 and AR005915-6010. When CEI presented further concerns with FG LA's survey of the Acadia site in 2019, *see* Pls. Mot. Ex. B & C, FG LA was required to conduct further analyses, *see* AR000324-407, and the Corps considered the results of that effort, along with the SHPO's concurrence, in its final permit decision. Plaintiffs may disagree with the

16

actions and analysis the Corps undertook in response to the issues raised in Plaintiffs' Exhibits A-D, but they cannot show that the Corps failed to consider them altogether. If anything, Plaintiffs' proffered documents reinforce the point that the NHPA process works, and that the reviewing agencies considered information submitted during the permit review process. Had CEI had more information to share, it should have done so during the review process.

Moreover, Plaintiffs' criticism of the Corps' reliance on survey work done by the contractor selected by FG LA is misplaced. Pls. Mot. at 11. Courts have regularly upheld the practice of requiring permit applicants to supply studies and documentation for review by the agency both under the NHPA and in the analogous context of NEPA and the Clean Water Act. In *Crutchfield v. County of Hanover, Virginia*, the court rejected a similar argument related to the Corps' use of studies provided by the applicant in verifying activity under a nationwide permit. *See* 325 F.3d 211 (4th Cir. 2003). The court noted that "to require the Corps to do such independent studies rather than reasonably relying on extensive studies given to them by applicants 'would place unreasonable and unsuitable responsibilities on the Corps,' which receives thousands of permit applications per year." *Id.* at 223-24 (citing *Friends of the Earth v. Hintz*, 800 F.2d 822, 835-36 (9th Cir. 1986) (applying reasoning to uphold NEPA analysis). Neither the Advisory Council's Section 106 regulations nor the NEPA regulations require an agency to gather its own information. *See Hintz*, 800 F.2d at 834-35. *Hintz* found that the Corps fully complied with NEPA where it had accepted a report from an applicant and had "exhaustively studied that information prior to making its decision." *Id.* at 835.

Finally, Plaintiffs argue that *Oceana, Inc. v. Pritzker*, 126 F. Supp. 3d 110 (D.D.C. 2015), supports their argument. Pls. Mot. at 11. Not so. There, the court explicitly did not rely on the "relevant factors" exception, which is the only exception Plaintiffs cite to justify admitting

Exhibits A-D. *See* 126 F. Supp. 3d at 113 (agreeing only with claim that agency "failed to adequately explain the grounds for its conclusion," and not addressing whether agency "failed to consider all relevant factors in reaching that conclusion"). Rather, the court's decision to admit an expert declaration challenging findings made by the National Marine Fisheries Service was rooted in the fact that, due to the case's procedural posture, those opposed to the proposed action did not have the opportunity to submit their evidence in conjunction with comments given during an agency's notice and comment period. *Id.* Conversely, Plaintiffs here had an opportunity to present their comments, including those that involved technical subject matter, to the Corps. The Corps, in conjunction with the State, solicited public comment and held a public hearing in Vacherie, the largest town near the project site. AR002266. As discussed *supra*, CEI was involved in the administrative process, but did not participate in the public comment process regarding this subject matter. Plaintiffs availed themselves of the opportunity to present such information and cannot not use improper extra-record evidence as a backdoor mechanism to add comments, particularly where the NHPA and APA  in general do not allow for it.Thus, Plaintiffs' cite case is inapposite, and the documents in Exhibits A-D do not establish that the methodology the Corps' archaeologist relied upon was inappropriate or that the Corps failed to consider the relevant factors.

**C.      Plaintiffs' Exhibits F-H do not meet any of the unusual circumstances justifying their consideration as extra-record evidence.**

Plaintiffs urge this Court to consider three additional documents post-dating the Corps' permitting decision because Plaintiffs argue they are "needed as background information to determine whether the agency considered all of the relevant factors." Pls. Mot. at 12-13. However, these documents are simply irrelevant to any claim presented in this case. The documents, written in May and June 2020, post-date the Corps' September 2019 decision by nine

months and thus can provide no insight into factors the Corps considered in making that decision. *See Marcum*, 751 F. Supp. 2d at 78; *see also IMS, P.C.*, 129 F.3d at 623. Furthermore, the Corps only received one of the three documents.[4]

Plaintiffs have not explained what "relevant factors" the documents proposed for admission purportedly show the Corps overlooked, or how the issues they discuss that have only arisen recently could have been considered in the permit process. Exhibits F through H discuss current issues regarding access to an active construction site. They are not dispositive of any permanent impacts to Buena Vista cemetery or the public's access to that site once visitation is safe or evidence that historic resources were damaged. Further, admission of these documents would not aid in judicial review because the issues they raise are beyond the scope of the claims raised here, which only challenge whether the decision complied with the law, not whether the permit is being correctly implemented.[5] Plaintiffs did not address public access to the Buena Vista cemetery, aesthetic impacts of the Project on that cemetery, or the cemetery's potential relocation in their comments on the permit, and their Complaint in this case is silent as to these issues.[6] Plaintiffs fail to show that Exhibits F-H present sufficient reason to overcome the general rule that a reviewing court should have before it only that information which the agency had when it made its decision. Their request that Exhibits F-H be admitted should therefore be denied.

---

[4] The Corps was carbon copied on Exhibit F.
[5] There are no terms in the Corps' permit guaranteeing public access to the property. Even if there were such requirements in the permit, this case does not present the forum for Plaintiffs to enforce such provisions. *Heckler v. Chaney*, 470 U.S. 821, 832-33 (1985).
[6] Relatedly, Plaintiffs also urge this Court to consider the documents proposed for inclusion for the limited purpose of assessing their likelihood of irreparable injury. Pls. Mot. at 2 n.1. After Plaintiffs' Motion for a Preliminary Injunction was withdrawn, Min. Order, July 24, 2020, the documents are not proper evidence in support of irreparable injury because that issue is not before this Court.

## IV.    CONCLUSION

This Court should deny Plaintiffs' Motion to admit extra-record evidence.


Dated: August 3, 2020                                      Respectfully submitted,


                                                           JEAN WILLIAMS
                                                           Deputy Assistant Attorney General
                                                           Environment & Natural Resources Division

                                                           *s/ Jacqueline M. Leonard*
                                                           Jacqueline M. Leonard
                                                           NY Bar No. 5020474
                                                           Natural Resources Section
                                                           (202) 305-0493
                                                           Jacqueline.leonard@usdoj.gov

                                                           Andrew Knudsen
                                                           DC Bar No. 1019697
                                                           Environmental Defense Section
                                                           United States Department of Justice
                                                           Environment & Natural Resources Division
                                                           P.O. Box 7611
                                                           (202) 353-7466
                                                           Andrew.knudsen@usdoj.gov

                                                           *Counsel for Federal Defendants*