**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al*., | |
| *Plaintiffs,* | Case No.: 1:20-cv-00103-RDM |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, *et al*., | |
| *Defendants,* | |
| and | |
| FG LA LLC, | |
| *Defendant-Intervenor.* | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION TO ADMIT EXTRA-RECORD EVIDENCE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

    I.     The CEI Report Satisfies the Standards for the Admission of Extra-
           Record Evidence ................................................................................................ 3

          A.     The CEI Report Demonstrates that the Corps Failed to
                  Consider Relevant Factors ............................................................... 4

                1.     The CEI Report Identifies Three Factors the Corps
                          Failed to Consider .............................................................. 4

                2.     The CEI Report Illuminates Relevant Factors That
                          Are Missing from  the Record ............................................ 9

                3.     Extra-Record Evidence That Postdates the Agency's
                          Decision Is Admissible ..................................................... 11

                  4.     Defendants Omitted the Cemeteries' Discovery in
                          Their Joint Public Notice and Lay Blame on the
                          Public for Their Omissions and Oversights ..................... 12

          B.     The CEI Report Reveals the Corps Negligently Excluded
                  Information .......................................................................................... 15

          C.     The CEI Report Reveals Background Information and
                  Explanations Necessary to the Court's Review of the
                  Corps' Action ..................................................................................... 17

    II.    Exhibits A–D Also Meet the Standards for Admitting Extra-Record
           Evidence ........................................................................................................... 20

    III.    Exhibits F, H Also Meet the Standards for the Admission of Extra-
           Record Evidence .............................................................................................. 23

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ABA v. U.S. Dep't of Educ.*,
    370 F. Supp. 3d 1 (D.D.C. 2019) ....................................................................... 11, 18

*Am. Wildlands v. Kempthorne*,
    530 F.3d 991 (D.C. Cir. 2008) ............................................................................ 9, 14

*Am. Wildlands v. Norton*,
    No. 05-1043 (EGS), 2006 WL 2780702 (D.D.C. Sept. 21, 2006) ............................ 15

*Animal Legal Def. Fund v. Perdue*,
    872 F.3d 602 (D.C. Cir. 2017) .................................................................................. 9

*Calvert Cliffs' Coordinating Comm., Inc. v. U.S. Atomic Energy Comm.*,
    449 F.2d 1109 (1971) ............................................................................................... 20

*City of Dania Beach v. FAA*,
    628 F.3d 581 (D.C. Cir. 2010) ................................................................................. 17

*Comanche Nation v. United States*,
    No. 08-849-D, 2008 WL 4426621 (W.D. Okla. Sept. 23, 2008) ............................. 23

*Crutchfield v. Cnty. of Hanover*,
    325 F.3d 211 (4th Cir. 2003) ................................................................................... 23

*CTS Corp. v. U.S. EPA*,
    759 F.3d 52 (D.C. Cir. 2014) ................................................................................... 12

*Esch v. Yeutter*,
    876 F.2d 976 (D.C. Cir. 1989) .................................................................... 7, 18, 21

*Friends of the Earth v. Hintz*,
    800 F.2d 822 (9th Cir. 1986) ................................................................................... 23

*Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs*,
    No. 3:13-CV-126, 2015 WL 1883522 (S.D. Tex. Apr. 20, 2015) ........................... 12

*IMS, P.C. v. Alvarez*,
    129 F.3d 618 (D.C. Cir. 1997) .......................................................................... 12, 21

*Kent Cty., Del. Levy Ct. v. U.S. EPA*,
    963 F.2d 391 (D.C. Cir. 1992) ................................................................................. 16

*Nat. Res. Def. Council, Inc. v. Daley*,
    209 F.3d 747 (D.C. Cir. 2000) ................................................................................. 19

*Nat'l Wildlife Fed'n v. Marsh*,
    568 F. Supp. 985 (D.D.C. 1983) ................................................................. 13

*\*Oceana, Inc. v. Evans*,
    384 F. Supp. 2d 203 (D.D.C. 2005) ........................................................... 11

*\*Oceana, Inc. v. Pritzker*,
    126 F. Supp. 3d 110 (D.D.C. 2015) ........................................... 11, 13, 14, 19

*\*Oceana, Inc. v. Ross*,
    No. 17-cv-829 (CRC), 2020 WL 1905148 (D.D.C. Apr. 17, 2020) ................... 8, 9

*Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*,
    No. 3:05-0784, 2006 WL 1391439 (S.D. W. Va. May 17, 2006) ................... 14

*Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
    448 F. Supp. 2d 1 (D.D.C. 2006) ......................................................... 16, 21

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989) .................................................................................. 17

*Slockish v. U.S. Fed. Highway Admin.*,
    664 F. Supp. 2d 1192 (D. Or. 2009) ......................................................... 17

*Suffolk Cnty. v. Sec'y of Interior*,
    562 F.2d 1368 (2nd Cir. 1977) .................................................................. 14

*\*Sw. Ctr. for Biological Diversity v. Norton*,
    No. 98-934 (RMU/JMF), 2002 WL 1733618 (D.D.C. July 29, 2002) ......... 11, 14

*\*United Student Aid Funds, Inc. v. DeVos*,
    237 F. Supp. 3d 1 (D.D.C. 2017) ............................................................... 18

**Statutes**

54 U.S.C. § 300320(3) ...................................................................................... 10

54 U.S.C. § 306108 ........................................................................................... 10

**Regulations**

33 C.F.R. § 320.4(a)(1) ..................................................................................... 25

33 C.F.R. § 325.3(10) ........................................................................................ 13

36 C.F.R. § 800.2(a)(3) ............................................................................... 20, 23

36 C.F.R. § 800.2(d)(1) ........................................................................................ 18

36 C.F.R. § 800.2(d)(2) ........................................................................................ 18

36 C.F.R. § 800.4(b)(1) ........................................................................................ 19

36 C.F.R. § 800.4(d)(1) ........................................................................................ 18

36 C.F.R. § 800.6(a)(4) ........................................................................................ 18

40 C.F.R. § 1508.8 ............................................................................................... 10

**Other Authorities**

Ryan M. Seidemann, *Requiescat in Place: The Cemetery Dedication and Its
    Implications for Land Use in Louisiana and Beyond*, 42 Wm. & Mary Envtl. L. &
    Pol'y Rev. 895 (2018) .................................................................................... 1

Temporary Restraining Order, *RISE St. James v. Formosa Plastics LA LLC, a/k/a
    Formosa Plastics*, No. 39963 (La. 23rd Jud. Dist. Ct. June 15, 2020) ................... 24

## INTRODUCTION

In the former sugarcane plantations of Louisiana, many burial sites of enslaved people are unmarked and remain unprotected from threats. Some of Plaintiffs' members can trace their ancestry for generations back to St. James, including as enslaved or freed African Americans who worked on plantations and surrounding lands. The proper identification and safeguarding of plantation cemeteries are vital to preserving African American culture and history.

In Louisiana, cemeteries are often on private property and threatened by development projects that consider these sacred places an impediment to their plans. Ryan M. Seidemann, *Requiescat in Place: The Cemetery Dedication and Its Implications for Land Use in Louisiana and Beyond*, 42 Wm. & Mary Envtl. L. & Pol'y Rev. 895, 897–99 (2018). Against this historical backdrop, Federal Defendant U.S. Army Corps of Engineers (Corps) determined that Defendant-Intervenor FG LA LLC's (Formosa Plastics) massive petrochemical facility would not impact historic or cultural resources despite the discovery of at least two cemeteries believed to contain the remains of enslaved people and three other potential burial sites on the property. Formosa Plastics' petrochemical complex threatens to disturb and destroy these historic cemeteries without proper evaluation under the law.

The two recorded cemeteries on Formosa Plastics' petrochemical complex site believed to contain the remains of enslaved people—the Buena Vista Cemetery and the Acadia Cemetery—were overlooked by the Corps, the State of Louisiana, and Formosa Plastics' consultants until Coastal Environments, Inc. (CEI), an archeological firm based in Baton Rouge, notified them of their omission from the project's archeological reports. Through their motion to admit extra-record evidence, Plaintiffs ask this Court to consider a CEI Report that presents historical maps and aerial images of the property as well as a detailed analysis of the methodological errors and omissions in the Corps' and Formosa Plastics' identification and

1

investigation efforts. ECF No. 27-2 at 23–168 (Ex. E). The CEI Report documents the

carelessness with which the Corps and Formosa Plastics have addressed these cemeteries by

repeatedly overlooking, misplacing, poorly investigating, and ultimately failing to protect them

from harm. The CEI Report reveals these problems and presents new, relevant factors that the

Corps failed to consider in its historic and cultural resources procedures and determinations

under the National Historic Preservation Act (NHPA), National Environmental Policy Act

(NEPA), and Clean Water Act (CWA).

In opposing Plaintiffs' motion, the Corps and Formosa Plastics (collectively,

"Defendants") ignore the African American history of this site once again. Their arguments

about why the CEI Report does not meet the D.C. Circuit's exceptions for extra-record evidence

fail. First, they argue that the CEI Report does not present new, relevant factors that the Corps

should have considered because the cemeteries are discussed in the record. To the contrary, the

CEI Report discusses relevant gaps in the agency's analysis, including Defendants'

methodological errors in identifying the boundaries of the Buena Vista and Acadia cemeteries,

Defendants' omission of the fact that one-third of the Acadia Cemetery was not destroyed by

borrow pits and may remain intact, that Formosa Plastics never surveyed the accurate location of

the remaining portion of the Acadia Cemetery, and that historic maps reveal three additional

anomalies that may be burial sites.

Next, Defendants contend that the CEI Report is ineligible for admission as extra-record

evidence because it was not in their possession at the time the Corps issued the permit. However,

this is not the law of the D.C. Circuit and confuses the test for extra-record evidence with the

requirements for supplementing the record. Additionally, Defendants argue that extra-record

evidence is only permissible when there is a procedural deficiency. Plaintiffs meet that burden

2

because the NHPA and NEPA are procedural laws requiring identification of historic sites and disclosure of impacts to those sites, respectively. The evidence shows the Corps missed and mis-located historic sites on the property, thus impeding their procedural compliance. For similar reasons, Plaintiffs' additional extra-record evidence (ECF No. 27-2 (Ex. A–H)) should also be admitted.

Defendants' opposition to the extra-record evidence related to burial sites seeks to obscure the fact that Defendants repeatedly missed and mis-located historic sites by dismissing these significant errors as "nuanced points," "minor disagreements," and "at the margins." ECF No. 43 at 6, 18; ECF No. 44 at 14. Rather than investigating the accurate locations, Defendants have chosen willful ignorance. Their pleas to the Court to stay within the four corners of the agency's administrative record would deny a fair and full adjudication of this case. The extra-record evidence is necessary to demonstrate the errors and omissions of the Corps that risk destroying the graves of enslaved people and resulting in more lost African American history.

## ARGUMENT

I.      **The CEI Report Satisfies the Standards for the Admission of Extra-Record Evidence**

The Court should admit the CEI Report because it meets at least one of the extra-record evidence exceptions recognized by the D.C. Circuit. First, background material is needed to determine if the Corps considered all the relevant factors. Second, the report includes information that the Corps negligently excluded from the administrative record. Third, the CEI Report reveals the Corps' failure to adequately explain its conclusions and thus fills a gap needed for full and effective judicial review.

A.    The CEI Report Demonstrates that the Corps Failed to Consider Relevant Factors

1.    *The CEI Report Identifies Three Factors the Corps Failed to Consider*

The CEI Report illuminates several new, relevant factors that the Corps failed to consider, undercutting the Corps' argument that it is ineligible for admission under this exception. ECF No. 44 at 12–16. The CEI Report identifies, at a minimum, three relevant factors that the Corps failed to consider.

(1) The CEI Report reveals gaps—errors and omissions—in the Corps' identification of historic grave sites. The CEI Report demonstrates that Formosa Plastics' surveys for the Acadia Cemetery were consistently conducted in the wrong location. The historic maps and photographs analyzed by CEI demonstrate that the boundaries of the cemetery have been inadequately, and erroneously, defined by the Corps and Formosa Plastics.

The CEI Report's cartographic analysis shows that the Acadia cemetery, depicted by a central cross, appeared on the 1878 U.S. Coast Survey maps and corresponded with trees generally marking the area on aerial photographs between 1940 and 1961. Overlays of Formosa Plastics' survey trenches led the CEI Report to conclude "that neither set of trenches previously excavated by TerraXplorations fell within the limits of the cemetery location." ECF No. 27-2 at 56 (Ex. E) (see figure below overlain on an 1878 map and 1961 image, with the 2018 trenches in blue and the 2019 trenches in yellow—neither of which overlap with the cemetery, centered in the picture, in red).



Source: CEI Report, Figures 1-6, 1-13 (ECF No. 27-2 at 54, 62 (Ex. E))

The report demonstrates the Corps never verified Formosa Plastics' archeological reports or conclusions or consulted important federal maps marking with cross symbols the known cemeteries on the property.

(2) The CEI Report indicates that one-third of the Acadia cemetery lies outside of the borrow pits dug by the previous landowner (ECF No. 27-2 at 56 (Ex. E)), calling into serious question the Corps' adoption of Formosa's conclusion that a previous owner destroyed the cemetery. AR000107 ("the Acadia Cemetery which was historically know [sic] to be on the project site . . . may have [been] destroyed"). The original cemetery measured 136 by 115 feet, which means about 5,000 square feet of the cemetery's footprint should still be intact despite the

borrow pits. ECF No. 27-2 at 52, 56 (Ex. E). It also means that human remains are potentially still interred in that part of the cemetery and in need of protection. ECF No. 27-2 at 15 (Ex. C)

(3) The CEI Report identified three anomalies[1]—areas amidst fields that appear to have been protected from agricultural activities and other disturbance—on historic maps and aerial photographs that may constitute historic resources on the Formosa Plastics' site, possibly including human burials. ECF No. 27-2 at 128–58 (Ex. E). Numerous anomalies appear on aerial photos between 1940 and 1978. *Id.* at 157. CEI determined the sources of most of the anomalies, such as former sugarhouses, and CEI concluded that "[i]t is possible that some of [the remaining] anomalies represent additional unmarked burial sites, which must be verified archeologically." *Id.* at 157. Even if the source of the anomaly is a cultural resource that is not a burial ground, CEI recommended the limits be determined and assessments of National Registry eligibility be made. *Id.* at 157–58 (see figure below showing the locations of historic anomalies in yellow circles overlain on a 2018 image; anomalies D, H, and L on the project site require further investigation).

---

[1] The CEI Report refers to four anomalies on the property (ECF No. 27-2 at 157); however, according to Formosa Plastics' one of the anomalies is outside of the boundary of the petrochemical complex site (ECF No. 43 at 20 n.4).



Source: CEI Report, Figure 4-12 (ECF No. 27-2 at 155 (Ex. E))

Where, as here, there are "serious questions" about whether an agency considered relevant factors in reaching a decision, "consideration of all relevant factors includes at least an effort to get both sides of the story." *Esch v. Yeutter,* 876 F.2d 976, 993 (D.C. Cir. 1989) (upholding district court's decision to allow extra-record evidence).

The Corps cited *Oceana, Inc. v. Ross* for the proposition that the subject matter must be new (*see* ECF No. 44 at 12, 14), but *Ross* fully supports the admission of the CEI Report. That

case was about protecting dusky sharks from overfishing, and in it, the court admitted extra-record evidence created after the agency's decision: an expert declaration that provided opinions and conclusions about the agency's methods, use of data, and conclusions. *Oceana, Inc. v. Ross*, No. 17-cv-829 (CRC), 2020 WL 1905148, at *3–6 (D.D.C. Apr. 17, 2020). The court found that the expert declaration pointed out gaps in the agency's analysis and offered a detailed explanation of why observer coverage and fishing trip data was important to understand the decline in dusky shark bycatch and death. *Id.* at *5–6. Even though the record included observer coverage and fishing trip data, the court concluded that the declaration may bear on whether the agency considered these factors in concluding that the small amount of dusky shark catch did not warrant additional management measures. *Id.*

Here, as in *Ross*, the CEI Report will bear on whether the Corps made errors and omissions in concluding that the project would have no significant impacts on cultural or historic resources by (1) failing to accurately identify the boundaries of known burial sites and never correcting the problem that Formosa Plastics surveyed the wrong location of the Acadia Cemetery; (2) overlooking that one-third of the Acadia Cemetery was not excavated and relocated by borrow pits; and (3) missing and failing to evaluate three additional anomalies on the petrochemical complex site that may be historic sites. *See* AR000129.

While the *Ross* court excluded certain portions of the declaration, it excluded only the portions of the declaration that *matched* evidence already in the record. In contrast, most of the information in the CEI Report is not in the administrative record precisely because the Corps failed to consider it. To the extent any information matches that in the record, the *Ross* decision demonstrates the Court can still admit it and exclude those matching portions.

Nothing the Corps or Formosa Plastics cited in their briefs would warrant excluding this evidence. Moreover, the Corps' interpretation of the test to require "entirely new" subject matter would narrowly constrain this extra-record exception in a way the D.C. Circuit has not adopted. *Oceana v. Ross*, at *4; *c.f.*, *Animal Legal Def. Fund v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (describing the exception to allow "'background information' in order to determine whether the agency considered all of the relevant factors" (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

2.      *The CEI Report Illuminates Relevant Factors That Are Missing from the Record*

To the extent the Court looks to the record to discern its redundancy with information in the CEI Report, the Court will find that contrary to Defendants' contentions, the record lacks key information contained in the CEI Report. This information goes well beyond Plaintiffs' mere disagreement with the Corp's conclusions. *See, e.g.*, ECF No. 44 at 9, 14.

First, the Corps' record only tells a partial story that the CEI Report completes in terms of the inadequacy of the work done to identify historic resources to date. While the record highlights what a passive, backseat role the Corps played,[2] the CEI Report highlights how the Corps failed to consider important information bearing on the project's impact on historical resources.

---

[2] The Corps was on the receiving end of updates from Louisiana's State Historic Preservation Office (SHPO) and Formosa. The agency never verified or investigated the archeological surveys despite a series of problems that emerged. Statements in the Corps' brief demonstrate its sidelined role: "An archeological survey of Buena Vista uncovered human remains," "a subsequent investigation revealed that the boundaries of the Buena Vista cemetery were different," ECF No. 44 at 13; and "the Corps awaited the SHPO's concurrence." *Id.* at 16. The record contains no questions from the Corps to Formosa Plastics, SHPO, or CEI about the cemeteries; no notes on the archeological reports; and no independent research, maps, or imagery to confirm the applicants' work. Any sign of "[b]ackground research and literature review . . . conducted by Corps staff" is entirely missing from the record. AR000997.

Second, even if there is some overlapping and consistent information between the CEI Report and the record, it does not follow that the record covers the same subject matter. For example, Formosa Plastics highlights that they used the same 1878 map as the CEI Report. ECF No. 43 at 18. However, Formosa Plastics fails to mention that it only did so after CEI submitted it to the SHPO. More importantly, the CEI Report contains numerous other maps, and it reveals that even with the same 1878 map, Formosa's consultants got the locations of the cemeteries wrong and still failed to survey the correct area for the Acadia Cemetery. ECF No. 27-2 at 56 (Ex. E). The Corps contends "the CEI Report echoes the Corps' analysis that past agricultural work on the property impacted Acadia, concluding that excavation of several large borrow pits around the site potentially destroyed *two thirds* of it." ECF No. 44 at 14 (emphasis added). But this is unsupported by the record, and instead, the Corps' final decision implied there was nothing left of the Acadia Cemetery: "[i]t is suspected that the borrow pits onsite created 6 years ago may have destroyed and relocated the remains of that cemetery." AR000107. Importantly, the undisturbed third of the cemetery is a 5,000 square-foot burial site, and the potential existence of intact human remains of enslaved people should be properly evaluated, at the very least. In the record, the Corps never acknowledged that up to a third of the cemetery could remain intact or that it was never surveyed. Formosa Plastics' argument that the disagreement is all "at the margins," ECF No. 43 at 18, ignores the relevant legal standards, which requires the Corps to carefully examine and mitigate the impacts of the project on *all* historic and cultural resources. *See, e.g.*, 54 U.S.C. §§ 300320(3), 306108; 40 C.F.R. § 1508.8.

Third, Defendants do not dispute that the CEI Report identified "anomalies" not revealed in the record nor previously considered by the Corps, ECF No. 44 at 14; ECF No. 43 at 20. These anomalies appear on historic maps and images as clusters of trees or other irregularities on

the otherwise agricultural landscape—and that alone is a relevant factor the Corps should have

considered. Formosa Plastics attempts to discount the relevance of the anomalies by saying

shovel tests were conducted "on or around all four 'anomaly' sites." ECF No. 43 at 21. Yet as its

own consultant admitted, "[s]hovel tests are generally not the best method for identifying

unmarked cemeteries." AR005382. According to the CEI Report, the proper procedures are to

examine the anomalies using complementary techniques, including metal detectors, artifact

analysis, trenching or stripping, and cadaver dogs. ECF No. 27-2 at 157–58 (Ex. E). The Court

need not delve into any factual disputes about whether the anomalies are indeed burial sites, but

rather it need only decide whether it is a relevant factor overlooked by the Corps. *See Oceana,*

*Inc. v. Pritzker*, 126 F. Supp. 3d 110, 114 (D.D.C. 2015) (allowing extra-record "declaration

[that] only endeavors to point out gaps in the agency's explanation and analysis; it does not

purport to fill those gaps").

3.    *Extra-Record Evidence That Postdates the Agency's Decision Is*
      *Admissible*

Defendants also wrongly argue that it is inappropriate to admit the CEI Report because it

postdates the Corps' decision, but this is immaterial for all three extra-record exceptions. *See,*

*e.g.*, *ABA v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 37–40 (D.D.C. 2019) (admitting extra-record

evidence that postdated decision); *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 217 n.17 (D.D.C.

2005) (admitting a scientist's letter submitted four months after an agency's decision that

critiqued its use of a model because the critique had direct bearing on whether the agency

considered relevant factors and purported to undermine key evidence supporting the agency's

decision); *Sw. Ctr. for Biological Diversity v. Norton,* No. 98-934 (RMU/JMF), 2002 WL

1733618, at *7 (D.D.C. July 29, 2002) (admitting extra-record evidence that postdated decision

and undermined agency's methods and use of data).

Cases Defendants cited are distinguishable from this case. For example, in *IMS, P.C. v. Alvarez,* 129 F.3d 618, 624 (D.C. Cir. 1997) (*see* ECF No. 44 at 19–20), the court affirmed the denial of extra-record affidavits, finding that the information should have been submitted it to the agency; but here, as described in the next section, it was impossible for Plaintiffs to do so due to the Corps' inadequate notice of the cemeteries and because the public had no way to know that Formosa Plastics investigated the wrong locations until the final decision was made.  Likewise, *CTS Corp. v. U.S. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (*see* ECF No. 44 at 8), is inapplicable: the court denied admission because the motion was hidden in a footnote, "which is forfeiture," and because the agency had already rejected the underlying data as being too degraded to rely upon. Finally, Formosa Plastics' citation to *Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs,* No. 3:13-CV-126, 2015 WL 1883522, at *6 (S.D. Tex. Apr. 20, 2015) (*see* ECF No. 43 at 25) also fails for the proposition that courts reject reports created at the litigation stage because, although reluctant to consider post-decision documents, the court deferred its decision to consider them as extra-record background evidence.

4. *Defendants Omitted the Cemeteries' Discovery in Their Joint Public Notice and Lay Blame on the Public for Their Omissions and Oversights*

In their opposition briefs, the Corps and Formosa Plastics repeatedly assert the CEI Report should be excluded because it was not submitted during the 30-day public comment period. ECF No. 43 at 9, 14, 23–24; ECF No. 44 at 15, 19, 21, 22, 23. What they fail to note is that the Corps' August 27, 2018 public notice (AR004679–82) omitted any mention of

cemeteries [3] even though the Corps, Formosa Plastics, and SHPO already knew at least two were on the property. AR005353 (email from Aug. 10, 2018, stating, "another researcher recently found a version of an 1877 Coastal Survey map that showed two cemeteries on the proposed project property"). Where an agency fails to disclose a material issue for public comment, it cannot then fault Plaintiffs for failing to comment on it. *Nat'l Wildlife Fed'n v. Marsh*, 568 F. Supp. 985, 994 (D.D.C. 1983) (rejecting adequacy of public notice because important information was released late and "improperly eluded the public comment and hearing requirements."). That is particularly true here, where the Corps' own regulations require "[a] statement of the district engineer's *current* knowledge on historic properties" in its public notice. 33 C.F.R. § 325.3(10) (emphasis added). Admission of the CEI Report would ameliorate the Corps' procedural violation and lack of public notice. Plaintiffs only learned of the Acadia and Buena Vista cemeteries after the Corps issued its permit and only because they submitted a public records act request to the State of Louisiana Division of Archaeology. ECF No. 27-2 at 5–6 (Ex. A). Thus, Plaintiffs did not comment on these issues because the Corps failed to disclose the discovered burial sites in its notice.

The Corps and Formosa Plastics' efforts to distinguish this case from *Oceana v. Pritzker* fail. ECF No. 43 at 23–24; ECF No. 44 at 21–22. In that case, the court allowed a post-decision expert declaration "to point out gaps in the agency's explanation and analysis," relaxing the usual "rarity" of extra-record evidence because the plaintiff had no opportunity to comment.

---

[3] The Corps' public notice regurgitated boilerplate language stating that the Corps was "unaware" of historic resources on the project site and that the "possibility exists that the proposed work may damage or destroy presently unknown" historic resources. AR004681.The same boilerplate appears in most, if not all, Corps' public notices. *See, e.g.,* https://www.mvn.usace.army.mil/Missions/Regulatory/Public-Notices/; https://www.mvn.usace.army.mil/Portals/56/docs/regulatory/publicnotices/JOINT%20PUBLIC %20NOTICE_2552.pdf.

*Oceana v. Pritzker,* 126 F. Supp. 3d at 113–14. Plaintiffs similarly maintain their opportunity to comment on gravesites was thwarted by the agency's misleading public notice, creating an analogous situation to *Pritzker. See id.*; *see also Sw. Ctr.*, 2002 WL 1733618, at *7 (allowing extra-record evidence developed after the decision where the "first hint" of the agency's methodology appeared in the final action). Further, in *Pritzker*, the court found the lack of an opportunity to comment was sufficient grounds to allow the extra-record declaration, but it did not hold that it was a prerequisite to that finding. Defendants claim admitting the CEI Report would "incentivize plaintiffs to withhold information during the permit review process" (ECF No. 44 at 15; *see* ECF No. 43 at 24), but this is backwards. Instead it is Defendants' withholding of information from the public that would be rewarded and incentivized by a decision to exclude the CEI Report from this case. *See e.g., Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*, No. 3:05-0784, 2006 WL 1391439, at *2 (S.D. W. Va. May 17, 2006) (to exclude extra-record evidence because it was "not specifically raised during the comment period would 'in effect shift the burden of insuring the adequacy of the [environmental impact statement] to environmental challengers, even though the primary and nondelegable responsibility for providing such an analysis lies with the agency.'") (citing *Suffolk Cnty. v. Sec'y of Interior*, 562 F.2d 1368 (2nd Cir. 1977)).

Finally, the CEI Report can be distinguished from the scientist letters in *American Wildlands v. Kempthorne,* 530 F.3d 991 (D.C. Cir. 2008), on which Defendants' rely. ECF No. 43 at 29; ECF No. 44 at 8, 9. *American Wildlands* dealt not with extra-record evidence but with supplementing the record*,* and in it, the D.C. Circuit affirmed the district court's exclusion of scientist letters because the letters disagreed on the same precise issue—the expected spread of hybridization of cutthroat trout—that was fully analyzed in the final decision. 530 F.3d at 1002*;*

*Am. Wildlands v. Norton*, No. 05-1043 (EGS), 2006 WL 2780702, at \*1–2 (D.D.C. Sept. 21, 2006). Conversely, the CEI Report identifies mistakes and omissions in the agency's identification of burial sites; this is not "mere disagreement," but rather, an issue of plain errors and gaps in analysis, which is admissible.

        B.      <u>The CEI Report Reveals the Corps Negligently Excluded Information</u>

        The Court should admit the CEI Report because it shows that the Corps negligently excluded relevant information. The Corps and Formosa Plastics argue that this exception cannot apply because the Corps did not have the CEI Report in its possession until after its issuance of the permit; however, the CEI Report contains relevant information that should have been part of the Corps' identification efforts, but was negligently missed and overlooked. As stated in Plaintiffs' motion, the data underlying the CEI Report were available to the Corps before it made its decision. *See* ECF No. 27-2 at 159–66 (Ex. E) (all references pre-date the Corps' decision); *c.f.*, ECF No. 44 at 21, 22 (faulting CEI and Plaintiffs for not identifying available data before the decision). A vast majority of the data in the CEI Report was obtained from federal sources, including the National Archives. ECF No. 27-2 at 167–68 (Ex. E). Specifically, the CEI Report presents cartographic data (historical maps and aerial imagery) and "[t]he two most valuable documents were maps prepared by the U.S. Coast Survey in the 1870s," digital copies of which were obtained from the National Oceanic and Atmospheric Administration and the University of Alabama. *Id.* at 39. Additionally, the imagery analyzed in the CEI Report largely came from the U.S. Department of Agriculture and U.S. Geological Survey, with some also originating with the State of Louisiana. *Id.* at 41. The Corps acknowledged the scope of its analysis must date back to the 1800s. AR000162. Even though the CEI Report itself postdates the Corps' decision, the CEI Report fits the negligent exclusion exception because it contains adverse evidence that the agency negligently failed to find and disclose, even though this evidence pre-dates its decision.

The Corps attempts to limit this exception to only those documents the agency had in its possession yet excluded from the record lodged, but this conflates the standard for *supplementing* the record with that for extra-record evidence. A court untangled this exact confusion in a case Formosa Plastics cited. *Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5–6 (D.D.C. 2006). Specifically, to supplement the record, the moving party "must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker." *Id*. at 6. In contrast, to admit extra-record evidence, the moving party must prove that one of the D.C. Circuit's extra-record review exceptions applies. *Id.* The court recognized that extra-record evidence may be appropriate, regardless of whether the party meets the burden to supplement the record. *Id.* (declining to supplement and noting, "[w]hile a motion for the Court to consider the fourteen documents at issue as extra-record evidence may be appropriate in this case, such a motion is not presently before me.").

The exception for negligently excluded information is meant to allow extra-record evidence adverse to the agency's position. *Kent Cty., Del. Levy Ct. v. U.S. EPA,* 963 F.2d 391, 395–96 (D.C. Cir. 1992). In *Kent County*, the agency argued that the documents were inadmissible because they were discovered after the final decision. 963 F.2d at 395–96. The D.C. Circuit admitted the extra-record evidence because the agency's search for data "was at least negligent in failing to discover them when it searched for documents to support its position." *Id.* at 396. The Corps points to one post-decisional document not admitted in *Kent County,* ECF No. 44 at 11–12; however, the document was about *another project* that post-dated the agency action. *Id.* Here, the CEI Report is based on information available before the decision, and it is about the precise agency action challenged in this case.

Additionally, the Corps offers a red herring in urging the Court to distinguish between negligently excluded *documents* versus an agency's negligent search for *information.* ECF No. 44 at 12. The Corps bases its proposition that this exception is limited to *documents* that were negligently excluded on *City of Dania Beach v. FAA*, 628 F.3d 581 (D.C. Cir. 2010), but this is inapposite. ECF No. 44 at 12. In *Dania Beach,* the D.C. Circuit rejected a "vague proffer" of 1,500 pages containing "the entirety of three draft [environmental impact] statements" (which are documents), because the plaintiffs failed to identify *particular* adverse documents. 628 F.3d at 590. The outcome hinged on the movant's lack of specificity, not whether the excluded material was a *document. See id.* at 590–91. Here, the Corps' negligent search for historic maps and other readily available resources (in federal files) that underlie the CEI Report nonetheless fit this exception.

C.     The CEI Report Reveals Background Information and Explanations Necessary to the Court's Review of the Corps' Action

This Court should admit the CEI Report because the agency failed to adequately explain its decision. The Corps argues that the record provides enough background information and explanation for effective judicial review. To support its proposition, the Corps points to error-filled archeological reports by Formosa Plastics, some baseless concurrences, and public comments. ECF No. 44 at 17–18. The record provides scant support for the Corps' contention that there are no impacts to cultural and historic resources.

First, the Corps argues that extra-record evidence under this test may only be admitted for procedural deficiencies—a burden that is met here. *See* ECF No. 44 at 16. The NHPA and NEPA are procedural statutes, *Slockish v. U.S. Fed. Highway Admin.*, 664 F. Supp. 2d 1192, 1202 (D. Or. 2009); *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349–350 (1989), and the CEI report shows the Corps botched the required procedures—identification and disclosure of

17

impacts to historic resources. In *Esch v. Yeutter*, the D.C. Circuit articulated that extra-record evidence may be appropriate if the procedural validity of an agency's action is in serious question. 876 F.2d 976, 992 (D.C. Cir. 1989); *accord ABA v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 37 (D.D.C. 2019) (the "D.C. Circuit has consistently stated that where the district court cannot determine from the administrative record whether the agency complied with its procedural obligations, the district court may consider extra-record evidence;" citing *United Student Aid Funds, Inc. v. DeVos*, 237 F. Supp. 3d 1, 4 (D.D.C. 2017) (admitting extra-record evidence to determine procedural validity of action)). Also, the CEI Report will bear upon the adequacy of the Corps' compliance with the public notice and comment procedures under the NHPA, *see, e.g.,* 36 C.F.R. § 800.2(d)(1) ("The views of the public are essential to informed Federal decisionmaking in the section 106 process"); *id.* § 800.2(d)(2) ("The agency official must . . . provide the public with information about an undertaking and its effects on historic properties and seek public comment and input); *id.* § 800.6(a)(4) (agency "shall provide an opportunity for members of the public to express their views on resolving adverse effects of the undertaking"). Public involvement is not specifically triggered when the agency makes a "no effect" finding, *id.* § 800.4(d)(1), thus the CEI Report will assist the Court in determining whether the Corps properly determined that the public involvement provisions were unnecessary since the CEI Report shows the Corps failed to adequately identify burial sites and undermines the agency's "no effect" conclusion.

This case is an example of a procedural deficiency in which the agency rubber-stamped Formosa Plastics' archeological surveys that are part of the record, and the record lacks any independent analysis to support the agency's concurrence with Formosa Plastics' determination that there are no historic impacts. The CEI Report offers exactly the type of information that

courts have found necessary to review the adequacy of an agency's decision. *Pritzker,* 126 F. Supp. 3d at 113–14. The CEI Report provides background information necessary to evaluate the agency's claims about the gravesites and the procedural validity of its historic resources evaluation and determination. It also identifies gaps in the agency's analysis and identifies errors and omissions in the archeological reports on which the Corps relied for its ultimate "no effect" decision. The CEI Report fills that void where the Corps was silent and passively acquiescent. Extra-record evidence to highlight flaws and gaps in the agency's analysis is admissible; otherwise, judicial review would be reduced to a "rubber stamp" process in which courts would be forced to accept an agency's bare assertions to support its decisions. *See Nat. Res. Def. Council, Inc. v. Daley*, 209 F.3d 747, 755 (D.C. Cir. 2000).

Next, the Corps argues that it thoroughly explained its determination that the project would not impact historic resources. ECF No. 44 at 17–19. In reaching this conclusion, it points to Formosa Plastics' archeological reports and a few communications. *Id*. The mere appearance of these documents in the record does little to show that the Corps itself did anything amounting to a good faith, reasonable effort to identify and evaluate historic resource impacts. While the Corps' Memorandum of Record acknowledged the existence of the cemeteries (AR000110), recited information from Formosa Plastics' archeological reports (AR000165), and described SHPO's letters (AR000165); it lacked independent analysis by the Corps and cursorily concluded that "it has fulfilled its responsibilities under Section 106 of the NHPA." AR000166. But the Corps has an independent duty to make a "reasonable and good faith effort." 36 C.F.R. § 800.4(b)(1). Nowhere in the record is the Corps' "background research," "field investigations," or "field surveys" as claimed in its opposition. ECF No. 44 at 17.

Moreover, even if the Corps can rely on the applicant's reports in part, it must independently verify them under the NHPA, 36 C.F.R. § 800.2(a)(3), and NEPA. *Calvert Cliffs' Coordinating Comm., Inc. v. U.S. Atomic Energy Comm.*, 449 F.2d 1109, 1119 (1971) (the agency's "responsibility is not simply to sit back, like an umpire, . . . [r]ather it must itself take the initiative of considering environmental values at every distinctive and comprehensive stage of the process. . . ."). The CEI Report shows the agency failed to do so and simply rubber-stamped Formosa Plastics' findings.

Defendants try to cast Formosa Plastics' repeated archeological surveys as diligence. Specifically, the Corps mischaracterizes an email from the state archeologist—explaining that CEI provided a map and that he recommended surveys for the Acadia cemetery—as "the Corps required FG LA to conduct additional surveys, thus illustrating the Corps' diligence." ECF No. 44 at 18. Rather than diligence, that email demonstrates the CEI Report is a valuable missing link in the Corps' decision. The Corps attempts to cast the successive surveys as a compelling trajectory, but they instead reveal a bumpy road of shoddy archeological reports, missed historic properties, and mis-located burial sites. As the CEI Report shows, the errors and omissions have never been corrected. More is required of the Corps under the NHPA and NEPA. The procedural duties of the NHPA and NEPA require independent analysis supported by the facts in the record. Here, the CEI Report facilitates judicial review of the Corps' action because it demonstrates that the agency's conclusions lack adequate factual support.

## II.    Exhibits A–D Also Meet the Standards for Admitting Extra-Record Evidence

The Court should also admit Exhibits A–D because they also satisfy the standards for admitted extra-record evidence. Because the Corps and Formosa Plastics continue to confuse the standards for supplementing the record with those to admit extra-record evidence, their objections to Exhibits A–D on the grounds that the documents were not before the agency are

insufficient. For example, Formosa Plastics is misplaced in citing *Pac. Shores* (ECF No. 43 at

26) because that case involves the standard for supplementing the record, not the admission of

extra-record evidence. *Pac. Shores*, 448 F. Supp. at 5–6 (highlighting the differences between the

standards); *see also IMS, P.C. v. Alvarez,* 129 F.3d 618, 624 (D.C. Cir. 1997) (refusing to

supplement the record because the affidavits were not before the agency, but separately finding

they did not fall within the extra-record exceptions). Here, these exhibits meet the exception

allowing extra-record evidence "when the agency failed to consider factors which are relevant to

its final decision." *Esch*, 876 F.2d at 991 (citations omitted).

Exhibits B–D are responses to a public records request (Ex. A) Plaintiff RISE St. James

submitted to the State of Louisiana. They demonstrate the Corps knew about flaws in the historic

resources analysis and the importance of ensuring it was conducted properly. For example,

Exhibit B is an email exchange in early 2019 between CEI and the SHPO in which CEI states

that it is "greatly concerned that the contracting firm conducting this research did not examine

the correct area" and answering SHPO's technical questions about cartographic regression

analysis. ECF No. 27-2 at 8–13 (Ex. B). It indicates CEI tried multiple times to alert the

permitting agencies to the errors made. Exhibit C is a February 7, 2019 email thread between the

SHPO and Louisiana Assistant Attorney General stating that the undisturbed area of the Acadia

Cemetery may have intact interments that could present "dedication issues (inappropriate use of

a cemetery area)." *Id.* at 15 (Ex. C). Exhibit D is an August 8, 2018 email exchange between

Formosa Plastics' counsel and the SHPO explaining that avoidance of the remaining areas of the

Acadia Cemetery "would mean that portions of the planned Utilities Plant may have to be

relocated, which makes this a very difficult option for Formosa Plastics at this stage." *Id.* at 20

(Ex. D). These communications show the Corps should have conducted an independent review and verification before concurring that there would be no effects on historic resources.

First, Exhibits A–D demonstrate the Corps failed to consider key relevant factors. Specifically, Exhibit B shows that even after efforts to correct several errors and omissions in Formosa Plastics' archeological reports, it still had not examined the correct area for the Acadia Cemetery, which CEI conveyed to the SHPO. Exhibit C demonstrates the Corps never considered that one-third of the Acadia Cemetery was not destroyed by borrow pits, may still retain intact human remains, and should be properly and thoroughly evaluated. Exhibit D suggests that the Corps should have given heightened scrutiny to the surveys and information regarding the Acadia Cemetery because its protection would be "a very difficult option" for Formosa Plastics.

Second, contrary to Defendants' claims that these documents are unnecessary because the record already shows that the Corps became aware of the cemeteries, the documents raise new, relevant factors that the Corps should have considered. They show how absent the Corps was in the historic resources evaluation process. For example, the Corps prematurely determined there will be "No Historic Properties Affected for this undertaking" on January 28, 2019. AR000165. Meanwhile, these extra-record communications show the SHPO continued to receive information from CEI and problems plagued the historic resources evaluation. These communications demonstrate there were repeated errors and omissions by Formosa Plastics' contractors, which the Corps should have taken care to ensure were fully corrected. Finally, even if the Corps is permitted to rely on an applicant's documents and nothing obligates it "to re-do an applicant's investigative work" (ECF No. 43 at 27; *see* ECF No. 44 at 21), the agency remains

responsible for ensuring the accuracy of those findings upon which it relies and must do more than rubber-stamp an applicant's reports and conclusions. 36 C.F.R. § 800.2(a)(3).

The Corps' reliance on Formosa consultants' reports is distinguishable from the cases it cited because the extra-record evidence shows that Formosa Plastics' contractors repeatedly made mistakes and errors that had to be corrected by outside parties. *See, e.g.*, *Comanche Nation v. United States,* No. 08-849-D, 2008 WL 4426621, at *19 (W.D. Okla. Sept. 23, 2008) (the defendants failed to "stop, look and listen" and instead "merely paused, glanced, and turned a deaf ear to warnings of adverse impact" (citation omitted)); *c.f., Crutchfield v. Cnty. of Hanover*, 325 F.3d 211, 223–24 (4th Cir. 2003) (allowing an agency to rely on applicant's studies because they were "extensive" and provided "ample support for the conclusion"); *Friends of the Earth v. Hintz*, 800 F.2d 822, 835 (9th Cir. 1986) (holding an agency could rely on contractors because it "*exhaustively studied* that information prior to making its decision." (emphasis added)).

## III.   Exhibits F, H Also Meet the Standards for the Admission of Extra-Record Evidence

Plaintiffs do not dispute that Exhibits F and H constitute extra-record documents that the Corps never considered and postdate the agency's decision. They nonetheless should be admitted because they reveal relevant factors that the Corps failed to consider in arriving at its permitting decision and preparing its Memorandum of Record.

Exhibit F is a May 22, 2020 letter to counsel for Formosa Plastics on behalf of Sharon Lavigne of Plaintiff RISE St. James that requests access on Juneteenth to honor those buried at the Buena Vista Cemetery. ECF No. 27-2 at 172 (Ex. F). Exhibit H is a June 15, 2020 letter from counsel for Formosa Plastics denying RISE St. James' request to access the cemetery, stating

that the company plans to further investigate and re-inter the remains at another location.[4] ECF No. 27-2 at 178–80 (Ex. H).

These records identify factors that the Corps should have considered. First, the documents show that Formosa Plastics denied public access to the cemetery until Ms. Lavigne secured a court order for access. Temporary Restraining Order, *RISE St. James v. Formosa Plastics LA LLC, a/k/a Formosa Plastics*, No. 39963 (La. 23rd Jud. Dist. Ct. June 15, 2020). This contradicts the statement on which the Corps relied in concluding the project would not impact Buena Vista Cemetery. AR000110 ("the cemetery will be fenced outside of the facility . . . and the public will have access to it."). Second, the documents show adverse aesthetic impacts to historic resources that the Corps did not consider. Third, the documents show that Formosa Plastics plans to move the human remains to another location. These three impacts demonstrate errors in the Corps' analysis and decision.

Contrary to Defendants' claim that the factors are irrelevant to the legal claims at issue in this case, they bear directly on the propriety of the Corps consideration of the impacts of the project under the NHPA, CWA, and NEPA. Specifically, Formosa Plastics' denial of public access to and planned relocation of the Buena Vista cemetery indicates the Corps erroneously concluded "[t]he Buena Vista Cemetery is outside of the project APE and no project impacts would occur within 300ft." AR000999. The Corps' Memorandum of Record wrongly claims "the cemetery will be fenced outside of the facility because it is near the project boundary line and the public will have access to it." AR000110. The lack of public access, the possibility that human

---

[4] Exhibit G is listed as a June 5, 2020 email to Formosa Plastics' counsel on behalf of Plaintiff RISE St. James, a document that reiterated the request to access the Buena Vista Cemetery. Plaintiffs inadvertently uploaded the wrong exhibit with their motion and consider this exhibit ancillary to Exhibits F and H, thus no longer seek to admit that record.

remains will be removed and reinterred, and the adverse impacts the project will have on the aesthetics and other values of the cemeteries are also relevant effects that the Corps failed to evaluate in its NEPA analysis or its CWA and Rivers and Harbors Act public interest reviews. *See* 33 C.F.R. § 320.4(a)(1) ("All factors which may be relevant to the proposal must be considered including the cumulative effects thereof: among those are . . . aesthetics, . . . historic properties, . . . and in general, the needs and welfare of the people.")

Again, Defendants' argument that Plaintiffs were required to submit this information during the public comment period is misplaced. *Supra* 12–13. And the Corps' attempt to sweep aside these issues by claiming they were not specifically mentioned in the Complaint (ECF No. 44 at 23) fails because these issues fall squarely within Plaintiffs' allegations that the Corps failed to conduct a proper evaluation of the project's impacts to historic resources under the NHPA, CWA, and NEPA.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion to admit the CEI Report and Exhibits A–H as extra-record evidence because they each meet at least one of the three standards for the admission of such evidence.

Should the Court admit Plaintiffs' extra-record evidence, Plaintiffs do not oppose the inclusion of Formosa Plastics' proposed extra-record evidence, which confirms that borrow pits were dug by a previous landowner in the area thought to contain approximately two-thirds of the Acadia Cemetery. If that soil and the remains it may have contained were "relocated," as the Corps stated (AR000107), it does not in any way ameliorate the desecration of any burial sites that once existed there or diminish the need for the Corps to fully account for those that remain on the project site.

Dated: August 17, 2020

Respectfully submitted,

s/ *Julie Teel Simmonds*
Julie Teel Simmonds, CA Bar No. 208282*
Emily Jeffers, CA Bar No. 274222*
Lauren Packard, CA Bar No. 317774*
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Ph: (510) 844-7100
jteelsimmonds@biologicaldiversity.org
ejeffers@biologicaldiversity.org
lpackard@biologicaldiversity.org

Catherine Kilduff, DC Bar No. 1026160
CENTER FOR BIOLOGICAL DIVERSITY
801 Boush St., Ste. 200
Norfolk, VA 23510
Ph: (202) 780-8862
ckilduff@biologicaldiversity.org

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*