**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>U.S. ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL SCOTT A. SPELLMON[1] (in his official capacity as Commanding General of the U.S. Army Corps of Engineers),<br><br>   *Federal Defendants*,<br><br>   and<br><br>FG LA, LLC,<br><br>   *Defendant-Intervenor*. | Civil Case No. 1:20-cv-103-RDM |

**FEDERAL DEFENDANTS' MOTION FOR
VOLUNTARY REMAND WITHOUT VACATUR**

Defendants the U.S. Army Corps of Engineers and Lieutenant General Scott A. Spellmon (collectively, "the Corps") respectfully request that the Court remand the challenged agency action to the Corps without vacatur for further action and dismiss this case. Plaintiffs are challenging the Corps' issuance of Permit No. MVN-2018-00159-CM (the "Permit") to FG LA, LLC ("FG"), authorizing certain dredge and fill activities in waters of the United States under Clean Water Act ("CWA") section 404. On November 12, 2020, acting pursuant to its authority under 33 C.F.R. § 325.7(c), the Corps gave notice to FG that it is reevaluating the Permit due to

---

[1] Lieutenant General Scott A. Spellmon has succeeded Todd T. Semonite as Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers and, pursuant to Fed. R. Civ. P. 25(d), is automatically substituted as a party in this case.

potential defects in the Corps' CWA alternatives analysis and has suspended that Permit. *See* Dkt. 69-1 ("Notice"). Following its reevaluation, the Corps will either reinstate, modify, or revoke the Permit. Thus, the Corps' reevaluation of the Permit will result in a new administrative record and a new final agency action superseding the agency action challenged here. While the Permit is suspended and until the Corps undertakes new agency action, none of the activities that the Permit authorized may proceed, with the exception of limited work necessary to safely wind down FG's previously undertaken activities. In light of these developments, remand without vacatur and dismissal of Plaintiffs' complaint is proper. Because the Corps' reevaluation has the potential to render moot some or all of the issues raised by Plaintiffs and will eventually supersede the challenged action, remanding the Permit will preserve the Court's and the parties' resources by avoiding potentially needless litigation. Counsel for the Corps has conferred with counsel for the other parties regarding this motion. Counsel for Plaintiffs stated that Plaintiffs take no position on this motion until they see the papers filed with the Court and intend to file a response in accordance with the time provided in the Court's scheduling order. Counsel for FG likewise stated that FG will reserve its position until after the motion is filed.

## BACKGROUND

**I.    Legal Background**

The Clean Water Act ("CWA") prohibits "the discharge of any pollutant by any person" into waters of the United States, 33 U.S.C. § 1311(a), including the discharge of dredged and fill material, unless the discharger "obtain[s] a permit and compl[ies] with its terms." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 11 (1981) (citation omitted). Under the CWA, the Corps regulates discharges of dredged and fill materials into wetlands and

other waters of the United States through the issuance of permits under CWA section 404.  33 U.S.C. § 1344(a).

Section 404 permitting is an adjudicatory process in which the project proponent submits an application to discharge dredged or fill materials into a specific location in connection with a specific project.  The Corps then considers that application under the CWA and applicable regulations, with an opportunity for public notice of and comment on the application, culminating in a final decision to either grant or deny the application.  *See, e.g.*, *Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986); 33 C.F.R. § 325.2.  To reach a final permit decision, the Corps reviews the specific proposal and its impacts on waters of the United States and the public interest in accordance with applicable regulations at 33 C.F.R. parts 320, 325, and 327.  The Corps must also follow guidelines promulgated by the U.S. Environmental Protection Agency under section 404(b)(1) of the CWA (the "Guidelines") and incorporated by the Corps into its own regulations.  *See* 40 C.F.R. pt. 230; 33 C.F.R. § 320.2(f).  Among other requirements, the Guidelines require the Corps to determine that there is no "practicable alternative" to the proposed activity "which would have less adverse impact on the aquatic ecosystem …." 40 C.F.R. § 230.10(a).  The Corps' final decision is reviewable in federal court under the Administrative Procedure Act.  5 U.S.C. § 704.

The Corps also may voluntarily reconsider its permit decisions under 33 C.F.R. § 325.7.  The district engineer "may reevaluate the circumstances and conditions of any permit … and initiate action to modify, suspend, or revoke a permit as may be made necessary by considerations of the public interest." 33 C.F.R. § 325.7(a).  He or she may also "suspend a permit after preparing a written determination and finding that immediate suspension would be in the public interest." *Id.* § 325.7(c).  If the permit is suspended, the district engineer will order

3

the permittee to stop those activities previously authorized by the suspended permit.  *Id.*  The permittee may request a meeting with the district engineer and/or a public hearing to present relevant information.  *Id.*  After that meeting or hearing (or, if none is requested, within a reasonable time after issuance of the suspension notice) the district engineer will take action to reinstate, modify, or revoke the permit.  *Id.*; *see id.* § 325.7(b) (describing modification procedures), (d) (describing revocation procedures).

## II.     Procedural Background

The Corps issued the Permit under section 404 of the CWA and section 10 of the Rivers and Harbors Act on September 5, 2019.  AR000001.  The Permit authorizes FG to "[c]lear, grade, excavate, and place fill and aggregate material to construct and maintain a Greenfield Petrochemical Complex and Marine Facility (The Sunshine Facility), in accordance with" plans submitted to the Corps.  *Id.*  The Permit was accompanied by a "Memorandum for Record" setting forth the Corps' environmental analyses and other findings supporting the Permit's issuance, including the alternatives analysis required by the Guidelines.  AR000104 ("MFR"); *see* AR000137-44 (explaining alternatives analysis).

Plaintiffs filed this suit on January 15, 2020.  Dkt. 1.  Plaintiffs assert claims under the Administrative Procedure Act based on alleged violations of the CWA, National Environmental Policy Act, National Historic Preservation Act, and Rivers and Harbors Act.  The Corps filed an index to the administrative record for the Permit on May 29, 2020, and a supplemental index on August 12, 2020.  Dkt. 25, 46.  Plaintiffs filed a motion to admit extra-record evidence on July 13, 2020, which the Court granted in part and denied in part on September 22, 2020.  Dkt. 27, 61.

Plaintiffs also filed a motion for preliminary injunction on July 14, 2020.  Dkt. 28.  Pursuant to a July 23, 2020 stipulation of the parties, Plaintiffs withdrew their motion for preliminary injunction, while FG agreed to defer construction-related activities for the permitted

facility (other than certain enumerated activities) until February 1, 2021, and all parties agreed to a schedule for merits briefing.  Dkt. 41.

On November 4, 2020, Federal Defendants informed the Court of their intent to file this motion for voluntary remand ("Remand Motion") and requested a stay of summary judgment briefing pending the Court's resolution of that Remand Motion.  Dkt. 67.  Plaintiffs filed a response on November 5.  Dkt. 68.  In a November 5, 2020 minute order, the Court stayed summary judgment briefing and ordered the Corps to file a status report within twenty-four hours of issuing notice of the Permit's reevaluation to FG.  Minute Order (Nov. 5, 2020).  The Court further ordered the parties to meet and confer regarding a schedule for briefing this Remand Motion and to submit a proposed schedule within seven days of the Corps' issuance of the notice.  *Id.*

On November 12, 2020, the Corps issued the Notice to FG stating that the Corps had suspended the Permit for reevaluation under 33 C.F.R. § 325.7(c).  Dkt. 69-1.  The Notice was accompanied by a statement of findings explaining that the Corps had identified a potential defect in its alternatives analysis under the Guidelines related to the elimination of alternative sites in Ascension Parish, Louisiana.  Dkt. 69-2.  The Corps stated that it was suspending the Permit "to re-evaluate the alternatives analysis under the Clean Water Act and other aspects of the permit decision if appropriate."  Dkt. 69-1 at 1.  Federal Defendants notified the Court of the Notice's issuance on November 13, 2020.  Dkt. 69.

The Notice ordered FG to cease all activities previously authorized under the Permit and directed FG to contact the Corps if it believed any activities were necessary to stabilize project site integrity or otherwise prevent adverse impacts during the Corps' reevaluation.  Dkt. 69-1 at 1.  Following subsequent discussions between the Corps and FG, the Corps approved FG's

request to complete stabilization activities associated with improvements to Highway 3127 for traffic safety, public safety, and the functionality of drainage infrastructure. Any other activities taking place on the site while the Permit is suspended reflect either a controlled wind-down of permitted activities to stabilize the site during the Corps' reevaluation or activities that do not require Corps authorization under CWA section 404.

## ARGUMENT

Federal Defendants respectfully request that this Court remand the Permit without vacatur for further evaluation consistent with the Notice and dismiss this case. "It is undisputed that administrative agencies have inherent power to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008) (internal quotation marks omitted). For that reason, courts commonly grant requests for remand where an agency intends to reevaluate the challenged action. *See id.* at 24 (remanding challenge to Corps permit for consideration of new information); *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (noting D.C. Circuit's "tradition of allowing agencies to reconsider their actions where events pending appeal draw their decision in question"). This practice reflects the Court's preference "to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Sierra Club*, 560 F. Supp. 2d at 23 (internal quotation marks omitted); *see also Code v. McHugh*, 139 F. Supp. 3d, 471-72 (D.D.C. 2015) (noting that remand without vacatur "would allow the [agency] to properly address Plaintiff's claims"). Where an agency intends to revisit the challenged decision, remand is "usually appropriate" where "the agency's concern is substantial and legitimate," even if the agency has not yet concluded its decision was in error. *Sierra Club*, 560 F. Supp. 2d at 23-24;

*see also SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (noting "agency may request a remand (without confessing error) in order to reconsider its previous position").

Here, remanding the Permit for reevaluation under 33 C.F.R. § 325.7 is the most efficient means to address the Corps' concerns with its alternatives analysis and recognizes the Corps' authority and interest in reconsidering its own administrative decisions.  The Corps has determined that its analysis in the MFR may have been insufficient to support eliminating five alternative sites in Ascension Parish from its alternatives analysis under the Guidelines.  *See* Dkt. 69-2 ¶¶ 2-3.  On remand, the Corps will reevaluate whether it correctly determined that there are no practicable alternatives to FG's proposed project that would have less adverse impacts, as well as other issues the Corps may deem appropriate.  As part of that reevaluation, the Corps expects to request and consider additional information from FG to inform its analysis.  *See Sierra Club*, 560 F. Supp. 2d at 25 ("the Corps has a substantial and legitimate interest in reconsidering its permit decision on remand based on a more complete factual record").

Remand will conserve the Court's and the parties' resources by avoiding needless litigation.  The Corps' reevaluation may render moot some or all of the issues Plaintiffs have raised.  Although Plaintiffs have challenged several aspects of the Corps' decision beyond the CWA alternatives analysis, remand to allow agency reconsideration of a specific issue is appropriate even where that issue is only one of several raised by plaintiffs.  *See id.* (holding "the fact that plaintiffs assert more than one problem with" the challenged permit beyond issue that was focus of Corps' reevaluation "does not alter the factors … that the Court considers in its remand decision").  The Corps has also indicated that it may reevaluate other aspects of the Permit decision as it deems appropriate.  *See* Dkt. 69-1 at 1.  And in any event, once the Corps' reevaluation is complete, all of Plaintiffs' claims as currently pled will likely be rendered moot.

The Corps will ultimately take new action to either reinstate, modify, or revoke the Permit, resulting in a new agency action and administrative record. 33 C.F.R. § 325.7(c). Given the suspension and the forthcoming new agency action, there is no claim in Plaintiffs' complaint for the Court to adjudicate.[2]

Finally, remand without vacatur is most appropriate here. As noted above, the Corps has already suspended the Permit and ordered the cessation of previously authorized activities pending its reevaluation. *See* Dkt. 69-1 at 1. Thus, vacatur is unnecessary to prevent harm to Plaintiffs because Plaintiffs cannot suffer any of their claimed harms while the Permit is suspended. *See* Dkt. 62 at 6-7 (discussing Plaintiffs' claimed injuries from construction and operation of project); *Sierra Club*, 560 F. Supp. 2d at 25 (noting "the permit's suspension in effect removes the potential harm … in the areas under the Corps' jurisdiction"). Although the Corps has allowed FG to carry out limited activities after issuance of the Notice, *see supra* pp. 5-6, these wind-down activities have minimal impact and are limited to those necessary to avoid harms to public safety, traffic safety, and the environment that would arise from a blanket prohibition on activity previously authorized under the Permit.[3]

Likewise, the D.C. Circuit's *Allied-Signal* factors favor remand without vacatur here. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (holding decision whether to vacate depends on "the seriousness of the order's

---

[2] Accordingly, if the Court were to deny this motion and Plaintiffs seek to proceed on their claims as currently pled, Plaintiffs would likely be unable to demonstrate standing or ripeness, and their claims would be subject to dismissal.

[3] Any activities FG may undertake during the Permit's reevaluation that do not involve discharges into waters of the United States are beyond the Corps' jurisdiction under CWA section 404 and thus have no bearing on whether vacatur of the Permit is appropriate. *See Sierra Club*, 560 F. Supp. 2d at 26 n.3.

deficiencies" and the "disruptive consequences of" vacatur).  It is at least "conceivable" that the Corps could determine after reevaluation that its elimination of alternative sites in Ascension Parish was correct, based either on information already in the record or additional information provided by FG, and reinstate the Permit.  *Id.* at 151; *see also WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002) (remanding without vacatur where there was "non-trivial likelihood" agency could justify rule on remand).  And vacatur would disrupt the Corps' regulatory process for reevaluating and potentially reinstating its permits, thus undermining the respect for agencies' decisionmaking authority that underlies this Court's remand jurisprudence.

## CONCLUSION

For the foregoing reasons, the Corps respectfully requests that the Court grant its request for a voluntary remand of the Permit without vacatur and dismiss this case.

Respectfully submitted,

| | |
|---|---|
| Dated: December 2, 2020 | */s  Andrew D. Knudsen* |
| | ERIC GRANT |
| | *Deputy Assistant Attorney General* |
| Of Counsel: | ANDREW D. KNUDSEN |
| | Environmental Defense Section |
| MELANIE CASNER | DC Bar No. 1019697 |
| *Attorney* | (202) 353-7466 |
| U.S. Army Corps of Engineers | JACQUELINE LEONARD |
| | Natural Resources Section |
| | NY Bar No. 5020474 |
| | (202) 305-0493 |
| | United States Department of Justice |
| | Environment & Natural Resources Division |
| | P.O. Box 7611 |
| | Washington, DC 20044 |
| | |
| | *Counsel for Federal Defendants* |

9

**CERTIFICATE OF SERVICE**

I certify that on this 2d day of December, 2020, I caused the foregoing to be filed with the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

                                            */s/ Andrew D. Knudsen*
                                            ANDREW D. KNUDSEN